IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **DASFortus TECHNOLOGIES, LLC,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:07-cv-866 |
| ) | Judge Trauger |
| **PRECISION PRODUCTS MANUFACTURING** ) | |
| **COMPANY, LTD (HONG KONG),** ) | |
| **PRECISION PRODUCTS MANUFACTURING** ) | |
| **COMPANY, LTD (PRC), and FTEC** ) | |
| **MANUFACTURING** ) | |
| **COMPANY, LTD (PRC),** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court is the Motion to Quash Service filed by the defendant, Precision Products Manufacturing Company, Ltd. (Hong Kong) (Docket No. 81), to which the plaintiff, DASFortus Technologies, LLC, has responded (Docket No. 86), and the defendant has replied (Docket No. 91). For the reasons discussed herein, the defendant's motion will be denied.

## BACKGROUND

In the Complaint, DasFortus Technologies, LLC ("DASF") named three parties as defendants: Precision Products Manufacturing Co., Ltd. (Hong Kong), Precision Products Manufacturing Co., Ltd. (People's Republic of China), and FTEC Manufacturing Co., Ltd. (People's Republic of China).[1] In various filings in this litigation, PPM (HK) has provided

---

[1] These three defendant entities will be referred to herein, respectively, as "PPM (HK)," "PPM (PRC)," and "FTEC (PRC)."

1

multiple descriptions of the relationship, or lack thereof, between these three entities, some of which were detailed by this court in its November 10, 2008 ruling, in which the court quashed service and afforded DASF additional time in which to effectuate service.[2] (Docket No. 43 at 11 n.9, 13 n.11.) The motion that is currently pending, like the November 10, 2008 ruling, involves the sufficiency of DASF's attempts to serve the defendant entities.

On June 15, 2008, Thomas Murphy, a principal of DASF, had a meeting with Frank Zhu (a.k.a. Jiang Ping Zhu), whom DASF had identified as the defendants' principal, at a Shoney's restaurant in Franklin, Tennessee. (Docket Nos. 22-23, 25.) During the course of the meeting, Frank Zhu was served with a copy of the Complaint and the summons for FTEC (PRC). (Docket Nos. 22-23, 25.) Frank Zhu was not served with summonses for PPM (HK) or PPM (PRC) at that time, and summonses for these two defendants were subsequently reissued. (*See* Docket No. 27.)

On July 7, 2008, PPM (HK) moved to quash service on Frank Zhu. (Docket No. 21.) In its November 10, 2008 ruling, this court granted PPM (HK)'s motion, holding that DASF had not satisfied its burden of demonstrating that the June 15, 2008 service attempt was sufficient. (Docket No. 43.) This court ruled that, while Frank Zhu was, at some point, in a position to accept service for PPM (HK), there was no evidence that he was an agent or officer of PPM (HK) at the time service was actually made. (*Id.* at 11.) This court subsequently provided DASF

---

[2] Although this memorandum will discuss certain aspects of the November 10, 2008 ruling, that ruling provided background on the parties and the relationships between the defendants that will not be revisited here. Instead, this memorandum will presume familiarity with those aspects of the November 10, 2008 ruling.

2

with six months in which to satisfactorily effect service on the defendants. (Docket No. 48.)

To this end, on May 23, 2009, a summons for PPM (HK) was served on Sean Zhu (a.k.a. Hanping Zhu) at a church in Murfreesboro, Tennessee. (Docket No 63.)

## **ANALYSIS**

PPM (HK) has moved to quash service on Sean Zhu. (Docket No. 81.) The party that has attempted service bears the burden of establishing that service was valid. *Metro Alloys Corp. v. State Metals Indus.*, 416 F. Supp. 2d 562, 563 (E.D. Mich. 2006) (citing *Shirex v. Magnavox Co.*, 74 F.R.D. 373, 377 (E.D. Tenn. 1977)). The requirement of service of process is "not some mindless technicality," but, rather, is necessary "in order for a federal court to obtain and exercise personal jurisdiction over a defendant." *Taylor v. Stanley Works*, No. 4:01-CV-120, 2002 U.S. Dist. LEXIS 26892, at *8-9 (E.D. Tenn. July 16, 2002); *see Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991).

Service may be effected against a domestic or foreign corporation within a judicial district of the United States either by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," *see* Fed. R. Civ. P. 4(h)(1)(A); Fed. R. Civ. P. 4(e)(1), or by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires – by also mailing a copy of each to the defendant," Fed. R. Civ. P. 4(h)(1)(B). Tennessee state law provides the following with respect to service on a corporation:

3

> Service shall be made . . . [u]pon a domestic corporation, or a foreign corporation doing business in this state, by delivering a copy of the summons and of the complaint to an officer or managing agent thereof, or to the chief agent in the county wherein the action is brought, or by delivering the copies to any other agent authorized by appointment or by law to receive service on behalf of the corporation.

Tenn. R. Civ. P. 4.04(4). As the Tennessee Supreme Court has noted, neither the federal nor the Tennessee state rule for service on a corporation requires that "service be made solely upon a restricted class of formally titled officials." *Garland v. Seaboard Coastline R. Co.*, 658 S.W.2d 528, 530-31 (Tenn. 1983) (citations and quotations omitted). Rather, service may "be made upon a representative so integrated with the organization that he will know what to do with the papers. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service." *Id*.

DASF has submitted evidence in support of its assertion that service on Sean Zhu was proper, including a declaration from Thomas Murphy, a principal of DASF, stating that he had personal knowledge of Sean Zhu's role at PPM (HK). (Docket No. 86 Ex. 1 ¶ 2.) Thomas Murphy states that he is personally acquainted with both Frank Zhu and Sean Zhu, and that Frank Zhu handled sales for "PPM," while Sean Zhu handled its operations. (*Id*. ¶ 4.) Thomas Murphy further states that he was told by Frank Zhu that Sean Zhu would eventually manage a PPM factory in Wuhan, China and that, on or about May 15, 2008, Frank Zhu confirmed that Sean Zhu was the general manager of PPM's factory in Wuhan. (*Id*. ¶¶ 3-6.)

In support of its motion, PPM (HK) has submitted a declaration from Steven Wu (a.k.a. Jiangzhong Wu), an executive director and principal of PPM (HK), which contradicts Thomas Murphy's assertions, stating that PPM (HK) "never established nor does it have any ownership interest in a plant in Wuhan," and that Sean Zhu was never a manager of any such PPM (HK)

4

Wuhan Plant. (Docket No. 92 ¶ 10.) Steven Wu's declaration also states that Sean Zhu resigned from PPM (HK) on January 30, 2005 and, since then, has not been employed by PPM (HK). (*Id.* ¶ 7.) Further, Sean Zhu states that, while he is a PPM (HK) shareholder, he was not PPM (HK)'s agent and was not authorized to receive service on behalf of PPM (HK) when he was served with process on May 22, 2009. (Docket No. 85 ¶¶ 7-8.)

PPM (HK)'s own filings, however, are not consistent with its representations that Sean Zhu was not employed by PPM (HK) after January 30, 2005. In support of its response in opposition to DASF's motion for a case management conference, filed on June 4, 2009, PPM (HK) submitted a chart providing certain information about PPM (HK).[3] (Docket No. 68 Ex. 3) The chart, which contains a "Date of Approval" of April 9, 2009, lists Zhu Hanping – that is, Sean Zhu – as the chairman of the board of directors of PPM (HK).[4] (*Id.*) In addition, in its June 4, 2009 brief, PPM (HK) represented that Sean Zhu is one of the principals of PPM (HK), stating that "[c]urrently and at the time Frank Zhu was served with a Summons . . . Jiangzhong

---

[3]This chart, apparently prepared by an attorney based on translated information from PRC records, provides information about PPM (HK)'s ownership and management and was submitted in support of the assertion that Frank Zhu was not closely associated with PPM (HK) at the time he was served on June 15, 2008 at Shoney's. (Docket No. 66 at 5.)

[4]Although service on Sean Zhu at the Murfreesboro church did not occur until May 23, 2009, slightly more than a month after the chart's "Date of Approval," at the very least, the chart contradicts PPM (HK)'s assertion that Sean Zhu has not been closely associated with PPM (HK) since his resignation on October 28, 2007.

5

Case 3:07-cv-00866 Document 93 Filed 07/31/09 Page 5 of 7 PageID #: 584

Wu [Steven Wu] and Zhu Hanping [Sean Zhu] were the principals of FTEC/PPM (HK)."[5] (Docket No. 66 at 2.)

Given PPM (HK)'s inconsistent filings and the fact that certain of those filings actually support DASF's argument that service on Sean Zhu was sufficient, DASF has met its burden and successfully demonstrated that Sean Zhu was an officer or agent of PPM (HK) when he was served on May 23, 2009 at the Murfreesboro church. Thomas Murphy's testimony that Sean Zhu was, as of the time of service, a general manager, in conjunction with PPM (HK)'s own representations that Sean Zhu was a principal and chairman of the board of directors of PPM (HK) as recently as June 4, 2009, demonstrate that service on Sean Zhu was sufficient.

In addition to arguing that service on Sean Zhu was sufficient, DASF also argues that recently-unearthed evidence appears to reflect that the attempt at service made on Frank Zhu on June 15, 2008 at Shoney's was sufficient, contrary to this court's previous ruling. (Docket No. 68 at 2.) In support of its argument, DASF has submitted a declaration from an attorney, licensed to practice in the PRC and in the state of Washington, translating an annual inspection and registration document from the PRC, that describes Frank Zhu as the legal representative, general manager, director, and chairman of PPM. (Docket No. 58 at 1.) Although PPM (HK) argues that this document pertains to a company called PPM (Shenzhen), rather than PPM (HK) (Docket No. 91 at 2), the documents on which PPM (HK) bases its opposition do not support its argument. In any event, the court will not reconsider its previous ruling with respect to service

---

[5] In support of this assertion, PPM (HK) cited to an un-notarized affidavit from Steven Wu which states, "[c]urrently and at the time Frank Zhu was served with a Summons addressed to FTEC, myself and Zhu Hanping [Sean Zhu] have been the principals of FTEC/PPM (HK)." (Docket No. 67 at ¶ 12.) Although PPM (HK) was advised to re-file the affidavit (Docket No. 67), PPM (HK) never did so.

6

on Frank Zhu, as there is no motion to reconsider pending and there is no need to further untangle PPM (HK)'s inconsistent and unclear statements about its corporate identity in order to determine whether service on Frank Zhu was sufficient.  This court has found that service on Sean Zhu was sufficient.  The evidence adduced by DASF does, however, provide further support for the conclusion that the defendants' actions and statements are merely a corporate shell game intended to evade service.

## CONCLUSION

For the reasons discussed herein, the defendants' Motion to Quash Service on Sean Zhu will be denied.  An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

7