IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DASFORTUS TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:07-cv-0866 |
| | ) | Judge Trauger |
| PRECISION PRODUCTS MANUFACTURING | ) | |
| COMPANY, LTD (HONG KONG); | ) | |
| PRECISION PRODUCTS | ) | |
| MANUFACTURING, LTD (PRC); and | ) | |
| FTEC MANUFACTURING COMPANY, | ) | |
| LTD (PRC), | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Pending before the court are: (1) the plaintiff's Motion to Compel Production of Documents (Docket No. 126), to which defendant Precision Products Manufacturing Company, Ltd. (Hong Kong) ("PPM (HK)") has filed a response (Docket No. 128); (2) the plaintiff's Motion to Set Trial Date (Docket No. 132); and (3) PPM (HK)'s Cross-Motion for Leave to File Dispositive Motion and to Set Pretrial Conference and Trial Dates (Docket No. 134), to which the plaintiff has filed a response (Docket No. 135). For the reasons discussed below, the plaintiff's motions will be granted, and the defendant's motion will be denied.

## BACKGROUND

The plaintiff, DASFortus Technologies, LLC ("DASFortus"),[1] is a "manufacturer's

---

[1] For the purposes of this Memorandum, the term "DASFortus" will include DASFortus' predecessor entity, Fortus Technologies, Inc. Similarly, the term "PPM (HK)" will include PPM

1

representative" that outsources automotive components.[2] Defendant PPM (HK) is in the business of machining, fabricating, and assembling metal components.

To resolve the plaintiff's discovery motion, the court must examine the history of the transactions and corporate entities relevant to the plaintiff's claims. In 2003, DASFortus introduced PPM (HK) to Stanadyne Corp. ("Stanadyne") and Stanadyne's subsidiary, Precision Engine Products Corp. ("PEP-C"). In August 2004, PPM (HK), DASFortus, and Stanadyne entered into a five-year contract (the "Stanadyne Contract"), which provided that DASFortus would act as a sales representative to sell PPM (HK)'s products to Stanadyne "facilities," including PEP-C. The Stanadyne Contract provided that DASFortus would receive commissions on such sales. In December 2004, PPM (HK), DASFortus, and PEP-C entered into a separate Manufacturing and Supply Agreement (the "PEP-C Contract"), under which PPM (HK) agreed to manufacture specific parts for sale to PEP-C. This agreement also provided that DASFortus would receive commissions on sales to PEP-C.

In June 2006, GenTek, Inc. ("GenTek") announced that it had executed a purchase agreement to acquire the assets of PEP-C from Stanadyne. A June 30, 2006 GenTek press release stated that PEP-C's products were complementary to products manufactured by GT Technologies, which was "an operating division of GenTek Inc." (Docket No. 127, Ex. 1 at 1.) The Form 8-K filed by GenTek with the Securities and Exchange Commission on July 7, 2006

---

(HK)'s predecessors.

[2] The relevant facts and allegations, which are generally undisputed for the purposes of the instant discovery motion, are drawn from the parties' filings and from the Magistrate Judge's previous Order regarding PPM (HK)'s Motion for Protective Order (Docket No. 123).

stated that PEP-C's assets were purchased by Defiance, Inc. ("Defiance"), a wholly owned subsidiary of GenTek.[3] The asset purchase was completed on July 31, 2006.

The plaintiff alleges that, between July 2006 and November 2006, the volume and types of products sold to the former PEP-C did not change and that the former PEP-C and PPM (HK) continued to pay sales commissions to DASFortus.[4] In January 2007, however, PPM (HK) terminated the Stanadyne Contract; although PPM (HK) continued to make sales to the former PEP-C, it no longer paid commissions to DASFortus. In this suit, the plaintiff claims that PPM (HK) breached its contracts and that it owes the plaintiff for unpaid sales commissions.

The court's Initial Case Management Order provided that fact discovery should be completed by April 2, 2010 and that dispositive motions should be filed by May 16, 2010. (Docket No. 78.) On January 13, 2010, the plaintiff served its First Request for Production of Documents on PPM (HK). Document Request No. 6 requested "[a]ll invoices, purchase orders, [etc.] related to the sale or supply of products to GenTek, Inc. from June 2006 through December 2009."[5] (Docket No. 127, Ex. 3 at 3.) The plaintiff's requests did not define the term "GenTek,

---

[3] The Form 8-K also attached a copy of the asset purchase agreement among Defiance, PEP-C, and Stanadyne. Although the parties do not reference the Form 8-K, the court may take judicial notice of that public filing. *See* Fed R. Evid. 201(b) (allowing judicial notice of facts "not subject to reasonable dispute"); *Taylor v. KeyCorp*, 678 F. Supp. 2d 633, 638 (N.D. Ohio 2009) ("Public records include any materials subject to judicial notice, including securities filings made with the SEC . . . ."); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (holding that courts may take judicial notice of public companies' SEC filings).

[4] Apparently, PEP-C's facilities and personnel remained intact after the asset sale, and they continued to function as a unit. The court will refer to the PEP-C assets acquired by Defiance as "the former PEP-C."

[5] The plaintiff made a similar Document Request regarding sales to PEP-C. (Docket No. 127, Ex. 3 at 2.)

Inc."

It is unclear exactly what entity – GenTek, GT Technologies, Defiance, or PEP-C itself – placed sales orders with PPM (HK) following the July 2006 asset sale. Confusing matters is the fact that, after a December 2008 merger, Defiance changed its name to GT Technologies, Inc.; whereas before, GT Technologies was a mere operating division of GenTek, now, GT Technologies, Inc. is a separate corporate entity. In its brief, the plaintiff indicates that PPM (HK)'s post-July 2006 sales were made to "GT/PEP-C." (*See* Docket No. 127 at 3.) William Sutherland, the president of DASFortus, testified at his deposition that "GT" paid money for the relevant sales and that "GT Technologies" sent purchase orders to PPM (HK). (Docket No. 111, Ex. 7 at 92-93.) He further testified that PEP-C was sold to "GT Technologies" and that "PEP-C" and "GT" were "interchangeable terms to [him]." (*Id.* at 92.) Similarly, Thomas Murphy, who owns 50 percent of DASFortus via a holding company, testified that "GT Technologies PEP-C" placed orders with PPM (HK). (*Id.*, Ex. 1 at 42.) The plaintiff has also submitted a 16-page document with the heading "PEP PRODUCTION DB," which lists purchase orders and indicates that PPM supplied "PEP" with products between 2007 and 2009.[6] (Docket No. 127, Ex. 2.) Reflecting the lack of clarity on this issue, in a May 7, 2010 letter regarding outstanding discovery disputes, the defendant's counsel characterized PEP-C's assets as having been "sold to GenTek/GT Technologies." (Docket No. 127, Ex. 10 at 1-2.)

In February 2010, the parties agreed to extend the discovery deadline to July 1, 2010.

---

[6] This document was apparently produced to the plaintiff by GT Technologies, Inc. in response to the subpoena described below.

(Docket No. 105.) In March 2010, the parties' lawyers exchanged several letters regarding discovery; in these letters, the plaintiff's counsel made it clear that the plaintiff sought documents sufficient to establish "the factual predicate in terms of the sales volume at issue, so that the parties could be on the same page factually with respect to the amount of potential damages." (Docket No. 127, Ex. 6 at 2; *see also id.*, Exs. 7-8.)

On May 21, 2010, the plaintiff issued a subpoena duces tecum to GT Technologies, Inc., requesting documents regarding GT Technologies, Inc.'s or GenTek's transactions with PPM (HK).[7] (Docket No. 108, Ex. 2 at 30.) PPM (HK) moved to quash the subpoena and for entry of a protective order, arguing, among other things, that the requested records were irrelevant to this suit. (Docket No. 108.) On July 2, 2010, the court granted the parties' joint motion to extend the deadline to complete "all outstanding discovery" to 45 days after the resolution of the defendant's motion to quash. (Docket No. 116.) It also granted the parties' joint motion to extend the deadline for the filing of dispositive motions to 90 days after the resolution of the motion to quash. (Docket No. 119.)

On January 25, 2011, the Magistrate Judge denied the defendant's motion to quash, finding that GT Technologies, Inc.'s sales records were within the scope of discovery because they were relevant to the calculation of damages caused by the alleged contractual breach. (Docket No. 123 at 11.) The new discovery deadline was thus March 11, 2011, 45 days after the entry of the Order, and the new dispositive motion deadline was April 25, 2011, 90 days after the

---

[7] The subpoena requested documents regarding purchases "by you" of PPM (HK)'s products. (Docket No. 108, Ex. 2 at 30.) "You" was defined as "GT Technologies, or any of its owners, predecessors, parents, subsidiaries, . . . [or] affiliates." (*Id.*)

5

entry of the Order. GT Technologies, Inc. answered the plaintiff's subpoena by producing responsive documents regarding its purchases from PPM (HK) from July 12, 2007 through August 31, 2009. It did not, however, possess any documents regarding purchases earlier than July 12, 2007.

In a March 1, 2011 letter to defense counsel, the plaintiff's counsel sought production of documents regarding sales to the former PEP-C between July 31, 2006 and July 12, 2007. (Docket No. 127, Ex. 11.) The letter explained the plaintiff's position that Document Request No. 6, which requested documents regarding sales to "GenTek, Inc.," also covered documents regarding sales to GT Technologies, Inc. In the alternative, the plaintiff enclosed a Second Request for Production of Documents, which requested "[a]ll invoices, purchase orders, [etc.] related to the sale or supply of products to GenTek, Inc., its parents, its subsidiaries, or its affiliates, from July 31, 2006 through July 12, 2007." (*Id.* at 19.) In a response letter dated March 18, 2011, PPM (HK) argued that, by waiting until March 2011 to serve a discovery request regarding GenTek's subsidiaries, the plaintiff had waived any right to such documents. (*Id.*, Ex. 12.)

On April 13, 2011, the plaintiff filed the instant discovery motion, pursuant to Federal Rule of Civil Procedure 37, seeking to compel production from PPM (HK) of the July 31, 2006-July 12, 2007 sales records. In addition, on May 6, 2011, the plaintiff filed a Motion to Set Trial date, because the deadline for filing dispositive motions has passed, with no such motions filed. (Docket No. 132.) In response, on May 9, 2011, the defendant filed a cross-motion for an extension of time to file dispositive motions. (Docket No. 134.)

6

## ANALYSIS

Rule 37 provides that a party may move to compel production when an opposing party has failed to produce documents that the movant has properly requested. Fed. R. Civ. P. 37(a)(3)(B). The rule further provides that, if the motion is granted, the court must require the opposing party (or its attorney) to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. *Id.* 37(a)(5)(A). The court should not award expenses, however, when "the opposing party's nondisclosure . . . was substantially justified" or when "other circumstances make an award of expenses unjust." *Id.* 37(a)(5)(A)(ii)-(iii).

First, the defendant argues that the plaintiff's motion to compel should be denied because the motion was filed after the discovery deadline. (Docket No. 128 at 5-6.) Although a court *may* deny a motion to compel that is filed after the expiration of the discovery deadline, it is not required to do so. Instead, the court may, in its discretion, compel document production after the close of discovery. *E.g.*, *Gonzales v. Detroit Robin, Inc.*, No. 08-CV-14600, 2009 U.S. Dist. LEXIS 98180, at *4-5 (E.D. Mich. Oct. 22, 2009); *see also* Fed. R. Civ. P. 16(b)(4) (stating that a judge may modify a scheduling order). Here, after conducting a telephonic conference regarding the instant discovery dispute, the court specifically granted leave to the plaintiff to file its motion to compel. (Docket No. 125.) Thus, the court will not deny the plaintiff's motion simply because it was filed after the close of discovery.

Next, the defendant argues that any document request regarding post-July 2006 sales to any entity other than GenTek, Inc. is untimely, because the plaintiff's initial request only mentioned GenTek, Inc., not its subsidiaries or affiliates. (*Id.* at 7.) Although Document

Request No. 6 only specifically mentioned "GenTek, Inc.," a term that the request failed to define, it was clear from the parties' subsequent correspondence that the plaintiff sought documents regarding all sales to the former PEP-C, whether those sales were technically made to GenTek, Inc., GT Technologies, GT Technologies, Inc., Defiance, Inc., or PEP-C itself.[8] The defendant, no doubt, understood that the plaintiff required documents regarding sales to GenTek's subsidiaries and affiliates to calculate potential damages. Moreover, nothing indicates that it will be difficult or time-consuming for the defendant to collect these documents.

If, at the time the document requests were issued, the plaintiff mistakenly believed that PPM (HK)'s sales were made to GenTek, Inc., this confusion was understandable. The press release announcing the acquisition of PEP-C's assets stated that GenTek, Inc. had acquired them, and the defendant's counsel has stated, in correspondence to the plaintiff's counsel, that PEP-C's assets were sold to "GenTek/GT Technologies." Further muddying the waters is the fact that, when PEP-C's assets were sold, GT Technologies was a mere operating division of GenTek, not a separate corporate entity.[9] It was not until GenTek subsidiary Defiance, Inc. changed its name in 2008 that GT Technologies, Inc. existed as a separate entity.

In light of these circumstances, the court finds that plaintiff's initial document requests sufficiently requested the records that the plaintiff now seeks. Alternatively, the court finds that it has good cause to extend the discovery deadline to allow the plaintiff to serve its Second

---

[8] This is confirmed by the fact that the defendant did produce documents regarding commissions that were actually paid to the plaintiff on post-July 2006 sales to the former PEP-C. (*See* Docket No. 127, Ex. 5 ¶¶ 4-5.)

[9] Presumably, any document request regarding "GenTek, Inc." applies equally to GenTek's operating divisions, because they are not separate entities.

Request for Production of Documents. *See* Fed. R. Civ. P. 16(b)(4). Accordingly, PPM (HK) will be compelled to produce documents regarding its sales to GT Technologies, GT Technologies, Inc., PEP-C, or Defiance for the period from July 31, 2006 to July 12, 2007.[10]

The court will decline, however, to award the plaintiff the expenses that it incurred in filing the Motion to Compel. This discovery dispute arose in the first place because the plaintiff's initial document requests failed to clearly and unequivocally request documents regarding sales to GenTek, Inc.'s subsidiaries and affiliates. This failure is baffling, given that it is standard procedure in corporate litigation to include such language in discovery requests, particularly when there is any question regarding corporate structure. It is also baffling that the plaintiff did not, before the passage of the July 1, 2010 discovery deadline, simply serve supplemental document requests on PPM (HK) to clarify the scope of the requested documents. Because the plaintiff's own inexplicable failures are partly responsible for the current dispute, the court finds that it would be unjust to award the plaintiff its expenses. *See* Fed. R. Civ. P. 37(a)(5)(A)(iii).

Finally, the court finds no reason to extend the April 25, 2011 deadline for filing dispositive motions. The defendant argues that the parties' discovery dispute warrants an extension of the deadline, because the defendant was "distracted and prejudiced by plaintiff['s] new discovery request and following discovery motion." (Docket No. 134, Ex. 1 at 2.) This argument is unpersuasive; defense counsel should be capable of simultaneously (1) preparing a

---

[10] The Magistrate Judge has already found that such records are relevant to this action. (Docket No. 123 at 11.)

response to a simple discovery motion and (2) preparing a motion for summary judgment. This is particularly true when the discovery motion involves documents that the *defendant* has failed to produce. Accordingly, the court will deny the defendant's motion and will grant the plaintiff's request to set a trial date.

## CONCLUSION

For the reasons discussed herein, the plaintiff's Motion to Compel Production of Documents (Docket No. 126) is **GRANTED**, and defendant PPM (HK) is hereby **ORDERED** to produce to the plaintiff, by June 15, 2011:

> All invoices, purchase orders, freight invoices, wire transfers, and debit notices related to the sale or supply of products to GenTek, Inc., its parents, its subsidiaries, or its affiliates (including GT Technologies, GT Technologies, Inc., and Defiance, Inc.), from July 31, 2006 through July 12, 2007, including but not limited to the sale or supply of products to a broker to be supplied to GenTek, Inc., its parents, its subsidiaries, or its affiliates.

The court declines to award the plaintiff the expenses that it incurred in filing the Motion to Compel.

Furthermore, the plaintiff's Motion to Set Trial Date (Docket No. 132) is **GRANTED**, and an order setting a bench trial will be entered separately. Defendant PPM (HK)'s Cross-Motion for Leave to File Dispositive Motion and to Set Pretrial Conference and Trial Dates (Docket No. 134) is **DENIED**.

It is so Ordered.

Entered this 17th day of May 2011.

                                                          _____
                                                          ALETA A. TRAUGER
                                                          United States District Judge